### A10A2181. SEVOSTIYANOVA v. TEMPEST RECOVERY SERVICES, INC.
(705 SE2d 878)

ELLINGTON, Chief Judge.

In this case arising from the repossession and sale of a car, Ekaterina Sevostiyanova appeals from an order of the State Court of Cobb County in favor of Tempest Recovery Services, Inc. Sevostiyanova contends that the trial court erred in ruling against her on her tort claims, in excluding certain evidence, and in failing to amend its judgment to include findings of fact and conclusions of law. For the following reasons, we affirm.

"The court is the trier of fact in a bench trial, and its findings will be upheld on appeal if there is any evidence to support them. The plain legal error standard of review applies where the appellate court determines that the issue was of law, not fact." (Citations, punctuation and footnote omitted.) *Crowell v. Williams*, 273 Ga. App. 676 (1) (615 SE2d 797) (2005).

---

The record shows that, in March 2004, Sevostiyanova obtained a loan and purchased a 2001 Toyota Corolla. In July 2005, after she had fallen behind on her payments, Tempest repossessed the car and sold it. In January 2007, Tempest filed a complaint against Sevostiyanova, claiming that she owed the company $2,454 on the loan (representing the deficiency between the outstanding principal loan amount and the sale price), plus interest, late fees and collection costs. According to Sevostiyanova, she never received formal notice of the sale,[1] and it is undisputed that Tempest never perfected service of its complaint against Sevostiyanova. Sevostiyanova admitted, however, that she was notified about two months after the repossession that the company that had purchased her car loan was going to pursue a deficiency claim against her for approximately $2,445. In fact, when she filed for bankruptcy in December 2007, Sevostiyanova included the deficiency claim in a schedule of creditors holding unsecured, nonpriority claims against her. The bankruptcy court discharged Sevostiyanova's debts in March 2008. Tempest received notice of the bankruptcy action, but, due to an alleged miscommunication, it did not dismiss its complaint against her after her debts were discharged.

In September 2009, after Tempest had taken no action on its complaint for more than two years, the trial court ordered the parties to appear at a special calendar call to address the complaint. Sevostiyanova appeared, waived and acknowledged service of process, and filed an answer and a counterclaim against Tempest, contending that Tempest had improperly violated an automatic stay imposed in the bankruptcy case and wrongfully continued to pursue its claim against her in the trial court after the debt was discharged by the bankruptcy court. Because no representative appeared on behalf of Tempest, the trial court dismissed Tempest's deficiency claim for lack of prosecution, but allowed Sevostiyanova's counterclaim to remain pending.

Sevostiyanova subsequently amended her counterclaim to assert claims for negligent infliction of emotional distress, abusive litigation under OCGA § 51-7-80 et seq., and libel under OCGA § 51-5-1; each claim was based upon allegations that Tempest had continued to pursue its claim against her following the automatic stay and failed to dismiss its claim against her after the debt was discharged

---

[1] See OCGA § 10-1-36 (a) (When a lien holder repossesses a motor vehicle after default, the holder must send, within ten days after repossession, a notice of its intention to pursue a deficiency claim against the buyer. If the holder fails to do so, it is not entitled to recover a deficiency judgment against the buyer for the difference between the buyer's outstanding debt on the vehicle and the sale proceeds.); see also OCGA § 11-9-611 (b) (notice to debtor required before sale or disposition of collateral).

by the bankruptcy court. She also claimed that Tempest's sale of her car was commercially unreasonable[2] because it sold the car for less than its fair market value. She claimed that, as a result, Tempest owed her "actual damages caused by a sale at less than an adequate value," pursuant to OCGA § 11-9-625.[3]

The trial court conducted a bench trial on Sevostiyanova's counterclaim in December 2009; Sevostiyanova proceeded pro se and was the only witness to testify. Following the trial, the court entered judgment in favor of Tempest on each count of the counterclaim. This appeal followed.

1. Sevostiyanova contends that the trial court erred in entering judgment in favor of Tempest on her claim for damages arising from the sale of her car following its repossession. She claims that Tempest failed to conduct the sale of the car in a commercially reasonable manner and, as a result, sold her car at an unreasonably low price. According to Sevostiyanova, Tempest owed her the difference between the sale price and the car's fair market value.

The doctrine of judicial estoppel prevents Sevostiyanova from pursuing this claim, however.

> Under the doctrine [of judicial estoppel], a party is precluded from asserting a position in a judicial proceeding which is inconsistent with a position previously successfully asserted by it in a prior proceeding. Therefore, the doctrine is commonly applied to preclude a bankruptcy debtor from pursuing a damages claim that [the debtor] failed to include in his [or her] assets in the bankruptcy petition because a failure to reveal assets, including unliquidated . . . claims,

---

[2] See OCGA § 11-9-610 (b) ("Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable."); see also OCGA § 11-9-607 (c) (requiring commercially reasonable collection and enforcement).

[3] See OCGA §§ 11-9-625 (b) ("a person is liable for damages in the amount of any loss caused by a failure to comply" with the requirements of OCGA § 11-9-601 et seq., which addresses default and the requirements for the enforcement of a security interest in a secured transaction); 11-9-625 (c) (2) ("If the collateral is consumer goods, a person that was a debtor or a secondary obligor at the time a secured party failed to comply with this part may recover for that failure in any event an amount not less than the credit service charge plus 10 percent of the principal amount of the obligation or the time price differential plus 10 percent of the cash price."); 11-9-625 (d) ("A debtor whose deficiency is eliminated under Code Section 11-9-626 may recover damages for the loss of any surplus. However, a debtor or secondary obligor whose deficiency is eliminated or reduced under Code Section 11-9-626 may not otherwise recover under subsection (b) of this Code section for noncompliance with the provisions of this part relating to collection, enforcement, disposition, or acceptance."); see also OCGA § 11-9-615 (d) (1) (After the disposition of collateral, a secured party must apply the cash proceeds to the expenses of the disposition, to the satisfaction of the secured debt, and to other parties having secured interest in the collateral; the secured party shall then account to and pay the debtor any surplus funds.).

operates as a denial that such assets exist, deprives the bankruptcy court of the full information it needs to evaluate and rule upon a bankruptcy petition, and deprives creditors of resources that may satisfy unpaid obligations.

(Punctuation and footnotes omitted.) *Nat. Bldg. Maintenance Specialists v. Hayes*, 288 Ga. App. 25, 26 (653 SE2d 772) (2007).

As shown above, it is undisputed that Sevostiyanova knew that her car had been repossessed in July 2005 and that, within two months, she was notified that the car had been sold and that she was expected to pay approximately $2,445, representing the deficiency from the sale. She also testified that, at the time of the repossession and sale, she believed that the car was worth at least $7,000,[4] which was more than she owed on the car loan. Thus, her claim that Tempest sold her car for an unreasonably low price (and, as a consequence, owed her the amount of surplus funds that should have been generated from a commercially reasonable sale) arose at least two years before she filed for bankruptcy protection in December 2007.

Because this cause of action accrued prior to Sevostiyanova's commencement of her bankruptcy action, Sevostiyanova was required to disclose it in her schedule of assets to be included as property of the bankruptcy estate. 11 USC § 541 (2010) (property of the bankruptcy estate); *Kittle v. Conagra Poultry Co.*, 247 Ga. App. 102, 105-106 (1) (a) (543 SE2d 411) (2000). "[A]ny asset not properly scheduled remains [the] property of the bankrupt estate, and the debtor loses all rights to enforce it in his [or her] own name." (Citation omitted.) *Kittle v. Conagra Poultry Co.*, 247 Ga. App. at 107 (1) (b). Sevostiyanova did not amend her bankruptcy petition to disclose the cause of action, move the bankruptcy court to reopen her bankruptcy case to allow for an amendment, or otherwise alert the bankruptcy court and other interested parties of the claim. *Nat. Bldg. Maintenance Specialists v. Hayes*, 288 Ga. App. at 27-28; *Kittle v. Conagra Poultry Co.*, 247 Ga. App. at 107 (1) (b).

Consequently, because any recovery by Sevostiyanova on this cause of action would not inure to the benefit of her creditors, who were not fully compensated when the bankruptcy court discharged her debts, Sevostiyanova is judicially estopped from pursuing this claim. *Kittle v. Conagra Poultry Co.*, 247 Ga. App. at 107 (1) (b); *Reagan v. Lynch*, 241 Ga. App. 642, 643-645 (524 SE2d 510) (1999); cf. *Period Homes v. Wallick*, 275 Ga. 486, 488-489 (2) (569 SE2d 502) (2002) (A debtor was not judicially estopped from pursuing a cause of

---

[4] See Division 2, infra.

action against a third party, even though the cause of action accrued before the debtor filed for bankruptcy protection and the debtor failed to list the cause of action in his schedule of assets, because the debtor's creditors were paid in full out of the bankruptcy estate's funds and, therefore, the debtor's omission of the cause of action did not deprive the creditors of any resources that would have been used to satisfy their claims.).

2. Sevostiyanova contends that the trial court erred in excluding her opinion testimony regarding the fair and reasonable value of the car at the time of the repossession. Under OCGA § 24-9-66, "[d]irect testimony as to market value is in the nature of opinion evidence. One need not be an expert or dealer in the article in question but may testify as to its value if he [or she] has had an opportunity for forming a correct opinion." "The question of whether a witness has established sufficient opportunity for forming a correct opinion or has stated a proper basis for expressing an opinion is for the trial court. We review the court's decision for abuse of discretion." (Punctuation and footnotes omitted.) *Dept. of Transp. v. Southeast Timberlands*, 263 Ga. App. 805, 810 (3) (589 SE2d 575) (2003).

The trial transcript shows that Sevostiyanova testified that, in July 2005,

> I made the research regarding the fair market value on my car because I was going to sell it at the time of the repossession, before the repossession took place. I visited several dealers' stores, several car dealers, and I made a lot of research through the Internet, Web site, and I obtain[ed] the value for the car, [with] this particular mileage. . . . The mileage was 53,000. . . . And I made research with Kelley Blue Book value, . . . the level of the private party value and dealer value, and I compare[d] all of these values. And I went to the dealership and search[ed] for the Toyota Corollas[.] . . . In the dealership, the purchase price was much more than 10,000 [dollars], but the price for which they are willing to buy it . . . was around 7,000 [dollars]. And the Kelley Blue Book value was between seven and $9,000.

During this testimony, Tempest objected because Sevostiyanova's opinion testimony was based upon hearsay. The trial court responded that it was going to allow her to testify and then would determine whether she had laid a sufficient foundation for her opinion as to the car's value in 2005.

It is undisputed that Sevostiyanova has no education or experience in the valuation of vehicles. Further, she presented no evidence of the price she paid for the car in 2004, the condition of the car at

the time it was repossessed, the potential market for such cars in 2005, or other relevant factors to be considered in reaching a conclusion about the car's value. It follows that her conclusions about the car's value *were not her opinions at all*. Instead, she reached her conclusions solely by seeking out *the opinions of other people* who she believed had the requisite expertise to weigh the relevant factors before forming an opinion as to the car's value. But Sevostiyanova presented no evidence as to when she consulted these alleged experts and neither identified them nor called them to testify at trial. Essentially, her testimony is simply the restatement of the opinions of others who were not subject to cross-examination about how they reached their opinions.

Under these circumstances, we find that the trial court was authorized to conclude that Sevostiyanova's "opinion" testimony about the value of the car in July 2005 was based entirely upon hearsay and that, absent any evidence to show that the hearsay was reliable, she failed to demonstrate a sufficient foundation for her conclusions. Consequently, Sevostiyanova's testimony, standing alone, was insufficient to establish the fair and reasonable value of the car at the time it was repossessed.

3. Sevostiyanova contends that the trial court erred in ruling in favor of Tempest on her claim for damages arising from the sale of her car without the proper notice required by Georgia law. This claim fails for the same reasons explained in Division 1, supra.

4. Sevostiyanova contends that the trial court erred in ruling in favor of Tempest on her claims for abusive litigation and libel. Pretermitting whether Sevostiyanova abandoned these claims at trial,[5] for the following reasons, there was no error.

(a) Under OCGA § 51-7-81, "[a]ny person who takes an active part in the initiation, continuation, or procurement of civil proceedings against another shall be liable for abusive litigation if such person acts: (1) [w]ith malice; and (2) [w]ithout substantial justification."

(i) Sevostiyanova could not prevail on her abusive litigation claim because she failed to present any evidence that Tempest pursued its claim against her with malice. For the purposes of OCGA § 51-7-81, "malice" is defined as

> acting with ill will or for a wrongful purpose and may be inferred in an action if the party initiated, continued, or

---

[5] During trial, Sevostiyanova affirmatively stated to the court, "In this case, I just would like to maintain just [the] claim with regard to [Tempest's] unfair sale and incompliance [sic] with [OCGA §] 11-9-[611]."

procured civil proceedings or process in a harassing manner or used process for a purpose other than that of securing the proper adjudication of the claim upon which the proceedings are based.

OCGA § 51-7-80 (5).[6]

(ii) Moreover, OCGA § 51-7-84 (a)[7] specifically requires notice to the opposing party as a condition precedent to any claim for abusive litigation, so that the party will have the opportunity to voluntarily discontinue the proceeding at issue. It is undisputed that Sevostiyanova did not provide Tempest with the requisite advance notice of her abusive litigation claim.

She argues, however, that the clerk of the bankruptcy court provided notice to Tempest to cease all collection actions directed against her and that this notice gave Tempest the opportunity to change its position in order to avoid liability under OCGA § 51-7-81. Thus, according to Sevostiyanova, any additional notice she provided pursuant to OCGA § 51-7-84 (a) would have been "superfluous."

However, Georgia's abusive litigation statute is in derogation of the common law and must be strictly construed *against* the party asserting the right of action. *Land v. Boone*, 265 Ga. App. 551, 552 (594 SE2d 741) (2004). Sevostiyanova has failed to cite to any authority which supports her argument that the notice provided to a creditor during a bankruptcy action in the federal court system is sufficient to warn the creditor that it must cease its collection efforts in order to avoid liability on a state claim of abusive litigation.

Consequently, the trial court did not err in granting judgment in favor of Tempest on the abusive litigation claim.

(b) Sevostiyanova's libel claim was based upon Tempest's allegations in the deficiency claim against her, which was filed in January 2007, and Tempest's subsequent failure to dismiss the claim

---

[6] See also OCGA § 51-7-80 (8) (The term "wrongful purpose," when used with reference to any civil proceeding, claim, or other position, is such purpose that "results in or has the effect of: (A) [a]ttempting to unjustifiably harass or intimidate another party or witness to the proceeding; or (B) [a]ttempting to unjustifiably accomplish some ulterior or collateral purpose other than resolving the subject controversy on its merits.").

[7] As a condition precedent to any claim for abusive litigation, the person injured by such act shall give written notice by registered or certified mail or statutory overnight delivery or some other means evidencing receipt by the addressee to any person against whom such injured person intends to assert a claim for abusive litigation and shall thereby give the person against whom an abusive litigation claim is contemplated an opportunity to voluntarily withdraw, abandon, discontinue, or dismiss the civil proceeding, claim, defense, motion, appeal, civil process, or other position. Such notice shall identify the civil proceeding, claim, defense, motion, appeal, civil process, or other position which the injured person claims constitutes abusive litigation.
OCGA § 51-7-84 (a).

YALE LAW LIBRARY

after the debt was discharged in bankruptcy in March 2008. It is undisputed that Sevostiyanova first asserted the claim in September 2009.

(i) Under OCGA § 9-3-33, the statute of limitation for a libel claim is one year. *Barnwell v. Barnett & Co.*, 222 Ga. App. 694, 695-696 (2) (476 SE2d 1) (1996). Consequently, Sevostiyanova's libel claim was untimely.

(ii) Further, the complaint's allegations are privileged under OCGA § 51-5-8, and, as such, are not libelous as a matter of law.[8]

Therefore, the trial court did not err in ruling in favor of Tempest on Sevostiyanova's libel claim.

5. Sevostiyanova claims that the trial court erred by issuing an order that did not include findings of fact and conclusions of law and that it abused its discretion in failing to amend its order to include such findings and conclusions after she filed a request pursuant to OCGA § 9-11-52.[9] We disagree.

Sevostiyanova did not file a motion asking the trial court to enter findings of fact and conclusions of law until after the court had entered its judgment on her counterclaim. Thus, the provisions of OCGA § 9-11-52 (c) apply. Under that subsection, the entry of findings of fact and conclusions of law is permissive, not mandatory. *Mackey v. Fed. Nat. Mtg. Assn.*, 294 Ga. App. 495, 497 (4) (669 SE2d 397) (2008). We will interfere with the trial court's decision on whether to make such findings only if such decision demonstrates an abuse of its discretion. *Vernon Library Supplies v. Ard*, 249 Ga. App. 853, 854 (1) (550 SE2d 108) (2001). Because the issues presented in the court below are clearly reflected in the record, the only witness to testify at trial was Sevostiyanova, and, as shown above, the resolution of the issues depends on the law as applied to the undisputed facts, we find no abuse of discretion. Id.

*Judgment affirmed. Andrews and Doyle, JJ., concur.*

---

[8] Under OCGA § 51-5-8,

[a]ll charges, allegations, and averments contained in regular pleadings filed in a court of competent jurisdiction, which are pertinent and material to the relief sought, whether legally sufficient to obtain it or not, are privileged. However false and malicious such charges, allegations, and averments may be, they shall not be deemed libelous.

[9] OCGA § 9-11-52 (a) provides, in relevant part, that "in all nonjury trials in courts of record, the court shall upon request of any party made *prior to such ruling*, find the facts specially and shall state separately its conclusions of law." (Emphasis supplied.) In contrast, subsection (c) provides, in relevant part, as follows: "Upon motion made not later than 20 days *after entry of judgment*, the court *may* make or amend its findings or make additional findings and *may* amend the judgment accordingly." (Emphasis supplied.)

DECIDED JANUARY 26, 2011 —
RECONSIDERATION DENIED FEBRUARY 16, 2011.

Ekaterina Sevostiyanova, *pro se*.
*Lefkoff, Rubin & Gleason, Craig B. Lefkoff*, for appellee.