## A11A0081. DAVIS v. WALLACE et al.
(713 SE2d 446)

ADAMS, Judge.

Benjamin Davis appeals the trial court's grant of summary judgment in favor of Wanda Wallace, Mickey M. Bruce, Samuel Patterson and Cruser & Mitchell, LLP (sometimes referred to collectively as "Defendants") on his claims of abusive litigation and false imprisonment. He also appeals the trial court's denial of his motions for reconsideration and default. We affirm for the reasons set forth below.

At the pertinent time, Wallace and Bruce were members of the Riverdale city council. Davis was employed by the Riverdale mayor as a photographer, and his job duties included videotaping city

---

council meetings. This case arose in connection with two "Petition[s] for Stalking Temporary Protective Order" filed by Wallace against Davis.[1] Wallace filed her first petition on December 9, 2005 based upon information provided by Bruce that on the evening of November 8, 2005, Davis threatened to blow up or set fire to Wallace's residence. Wallace was not present at the time of these alleged threats, but Bruce called and told her about them. Bruce also reported the threats to the Riverdale police. On November 14, 2005, the investigating officer applied to a Clayton County magistrate for a disorderly conduct warrant against Davis, but the magistrate denied the application. Wallace subsequently accompanied police to the Clayton County solicitor-general's office to discuss the incident, which resulted in the solicitor-general's chief investigator calling Davis to tell him to stay away from Wallace. He also informed Davis that an investigator would be present at the next city council meeting to ensure that there were no problems. One week later, on November 21, the Riverdale police inactivated their investigation because there was "no indication of any criminal intent involving" Davis.

Nevertheless, on December 2, 2005, a Riverdale police investigator accompanied Wallace to the Superior Court of Douglas County to investigate the possibility of obtaining a restraining order against Davis, which resulted in Wallace's petition on December 9. That day, the superior court signed a temporary protective order ("TPO"), which enjoined Davis from contacting or coming within 100 feet of Wallace and which set a hearing for January 10, 2006. The next day, December 10, 2005, when Davis appeared at a city council meeting with his video equipment, Patterson, Riverdale's assistant chief of police, showed him the TPO and asked him to leave before the meeting began and before Wallace arrived. At the TPO hearing on January 10, the trial court granted Davis's motion to dismiss Wallace's December 9 petition on the ground that the hearing was untimely.[2] Wallace was represented by Shalena Cook from the law firm of Cruser & Mitchell, LLP ("C&M") at that hearing.

---

[1] We remind counsel that Ct. App. R. 25 (c) (2) (iii) requires that references to the record "should be indicated by specific [record] volume or part of the record and by (R-*Page Number* of the Record)." (Emphasis supplied.) In a case such as this one with only one record volume, all record citations simply should have begun with "R-" followed by the appropriate record page number(s) and not by the index number assigned to a particular pleading by the clerk of the lower court. In a case with multiple record volumes, the cite should indicate the particular volume or otherwise identify the part of the record first, then the record page number beginning with "R-." Accordingly, *citations to the record page number should be supplied in every case*, and there is no need to reference the trial court's index numbers unless, for some reason, there is no other way to identify a citation.

[2] Georgia law contemplates that a hearing on a temporary protective order be held no later than 30 days after the filing of the petition. OCGA § 9-11-65.

Wallace re-filed her petition the next day, January 11, 2006, and the superior court held a hearing on January 31, 2006. After hearing testimony from Bruce, Patterson, Wallace, and Davis, as well as argument from Cook as Wallace's counsel, the superior court judge found no evidence of stalking and denied the petition.

On or about December 10, 2007, Davis filed his complaint for damages in the State Court of Clayton County describing these events but without specifying a cause of action. The Defendants first interpreted the complaint as asserting a federal claim under 42 USC § 1983 and removed the case to federal court, where Wallace and Bruce filed an answer and Patterson and C&M apparently filed motions for judgment on the pleadings. The federal court subsequently granted Davis's motion to remand based upon his representation that he was asserting claims for abusive litigation under OCGA § 51-7-85 and not under federal law.[3]

Upon remand, Patterson and C&M renewed their motions for judgment on the pleadings in the state court. The trial court stayed its ruling on these motions to allow Davis time to conduct discovery and noted that as a result, the motions would be treated as ones for summary judgment. In their motions, Patterson and C&M interpreted Davis's complaint as asserting claims against them for defamation, and the trial court subsequently granted Patterson and C&M summary judgment as to any defamation claim. But the trial court expressly did not rule on "any claim for abusive litigation Plaintiff now seems to allege," because Patterson and C&M had not briefed the issue "including the threshold issue whether the *ante litem* notice pursuant to OCGA § 51-7-84 (a) was fulfilled." Davis filed a notice of appeal and a motion for reconsideration of that order, but later dropped the appeal.[4] Patterson and C&M then moved for summary judgment on Davis's abusive litigation and false imprisonment claims. On October 2, 2008, the trial court granted that motion and denied Davis's motion for reconsideration. The trial court based its grant of summary judgment, in part, on Davis's failure to provide ante litem notice of his abusive litigation claims as required under OCGA § 51-7-84.

Wallace and Bruce subsequently filed their own motion for summary judgment on October 5, 2009, and the trial court granted the motion on December 12, 2009. In the meantime, Davis filed a motion for reconsideration of the trial court's grant of summary judgment to Patterson and C&M and a motion for default judgment

---

[3] The federal court described the complaint as "far from a model of clarity; it fails to articulate a short and plain statement of the claim or claims that Plaintiff intends to pursue."

[4] In this appeal, Davis indicates that he never asserted any defamation claims, and we do not address the trial court's ruling in that regard.

on December 10, 2005. Patterson and C&M opposed Davis's motions, but "in an abundance of caution" filed answers to the complaint on January 25, 2010. The trial court ultimately denied Davis's motions for reconsideration and default judgment on March 12, 2010, and this appeal followed.

1. Davis argues that the trial court erred in granting any of the Defendants' motions for summary judgment because they did not file timely answers to his complaint and further asserts that the trial court erred in denying his motion for default on this ground. We disagree.

Wallace was served with Davis's complaint on December 20, 2007, and Bruce was served on December 26, 2007. The case was removed to federal court on January 11, 2008, and Wallace and Bruce filed a joint answer in federal court. The record contains a copy of that answer along with a notice of electronic filing from the United States District Court for the Northern District of Georgia indicating that Wallace and Bruce filed their answer on January 17, 2008, well within the 30-day filing requirement under OCGA § 9-11-12 (a). Although Davis asserts on appeal that they never filed an answer in federal court, the record indicates that his attorney was served electronically with a notice of this filing. It is well settled that "[a] timely answer filed in district court following timely removal of the action is sufficient to prevent a default in a state court if the case is subsequently remanded from district court." (Citation and punctuation omitted.) *Draper v. Reynolds*, 278 Ga. App. 401, 402 (1) (629 SE2d 476) (2006). Accordingly, Wallace and Bruce were not in default.

Patterson was served with the complaint on December 18, 2007, and C&M acknowledged in the Notice of Removal that it had been served on December 14, 2007. The removal was filed within 30 days of the first service on January 11, 2007, and the jurisdiction of the state court was suspended pending remand. *Cotton v. Federal Land Bank of Columbia*, 246 Ga. 188, 191 (269 SE2d 422) (1980). Patterson and C&M assert that they filed a "timely" motion for judgment on the pleadings in federal court, but neither the date of the filing nor the filing itself appears in the limited appellate record designated by Davis. Davis acknowledges the filing of that motion, however, as did the trial court, and Davis does not contend that the motion was in any way untimely.

Moreover, Davis is apparently willing to concede on appeal that if a defendant files a motion for judgment on the pleadings within the time allotted for filing an answer, the defendant is not in default until the trial judge rules on the motion adversely to the defendant, citing *Hopkins v. Harris*, 130 Ga. App. 489 (1) (203 SE2d 762) (1973). Pretermitting whether this is a correct statement of Georgia law, we find that Davis waived his right to assert an argument based upon a

failure by Patterson and C&M to timely respond to his complaint because he failed to raise this issue in a timely fashion before the trial court. In fact, the appellate record indicates that he waited until two months after the trial court granted summary judgment in favor of Patterson and C&M before raising this omission for the first time in his December 10, 2010 motions for reconsideration and default. Even then, he did not assert that the lack of an answer, in and of itself, precluded consideration of the summary judgment motions.[5] Rather, he argued that it waived Patterson's and C&M's right to raise an ante litem notice defense to his abusive litigation claims. A party who fails to raise a contention in opposition to summary judgment in the trial court waives the issue for appeal. *Ahmad v. Excell Petroleum*, 276 Ga. App. 167, 169 (2) (623 SE2d 6) (2005).

Similarly, Davis's motion for default was too little too late. Wallace and Bruce were never in default because they filed a timely answer, and by the time Davis made his motion, the trial court had already granted Patterson's and C&M's motions for summary judgment, thus terminating the case against them and obviating the need for a timely answer. See *Majeed v. Randall*, 279 Ga. App. 679, 681 (2) (632 SE2d 413) (2006). Moreover, we note that

> [t]he statutory right to judgment following default is not an indefeasible right, but may or may not be asserted, and may be waived by a plaintiff by proceeding with the action without taking advantage of his right to judgment in a timely and proper manner. Such waiver need not be expressed, but may be implied in law by conduct or circumstances inconsistent with the right to judgment. Acts which have been held to constitute waiver include: joining issue upon the pleadings, going to trial on the merits, or announcing ready for trial and introducing evidence on the merits.

(Citation omitted.) *Ward v. Swartz*, 285 Ga. App. 788, 790 (2) (648 SE2d 114) (2007). The trial court found that Davis waived his right to a default judgment by conducting discovery, responding to motions with evidence in support of the merits of his case, and announcing ready and requesting that the case be put on the trial calendar. We agree that these actions were sufficient to constitute an implied waiver of default; Davis waited until the case had effectively been litigated before seeking a default judgment.

2. Davis next asserts that the trial court erred in granting

---

[5] Davis did assert in his motion for default, however, that the summary judgment orders should be vacated based upon the Defendants' alleged default.

summary judgment on his abusive litigation claims because the Defendants waived their right to an ante-litem notice defense by failing to raise the issue as an affirmative defense in a timely responsive pleading.

Under OCGA § 51-7-84 (a),

[a]s a condition precedent to any claim for abusive litigation, the person injured by such act shall give written notice . . . to any person against whom such injured person intends to assert a claim for abusive litigation and shall thereby give the person against whom an abusive litigation claim is contemplated an opportunity to voluntarily withdraw, abandon, discontinue, or dismiss the civil proceeding, claim, defense, motion, appeal, civil process, or other position.

The trial court found that Davis had failed to provide such notice, and Davis does not dispute that finding. Rather he asserts that the Defendants could not rely upon this omission without asserting it as a timely affirmative defense. We disagree.

OCGA § 51-7-84 (a) expressly describes the notice as a "condition precedent" to an abusive litigation claim, which placed the burden upon Davis to provide such notice in order to assert his claims. Although a defendant may point to the absence of such notice in defending an abusive litigation claim, nothing in the statutory framework makes this an affirmative defense that must be pled in a responsive pleading to avoid waiver. If the General Assembly had intended to shift the burden to Defendants on this issue by making the omission of an ante litem notice an affirmative defense, it would have expressly done so as it did with the defense of good faith. Under OCGA § 51-7-82 (b) good faith is a complete defense to an abusive litigation claim; "provided, however, that good faith shall be an affirmative defense and the burden of proof shall be on the person asserting the actions were taken in good faith." "A well-established canon of statutory construction, inclusio unius, exclusio alterius, provides that the inclusion of one implies the exclusion of [the] others." (Citation and punctuation omitted.) *Rodgers v. Gen. Motors Corp.*, 277 Ga. App. 547, 550 (1) (627 SE2d 151) (2006). The abusive litigation statutes are silent as to any requirement that a defense based upon the ante litem notice be affirmatively pled and proven by a defendant. Moreover, "Georgia's abusive litigation statute is in derogation of the common law and must be strictly construed *against* the party asserting the right of action." (Citation omitted; emphasis in original.) *Sevostiyanova v. Tempest Recovery Svcs.*, 307 Ga. App. 868, 874 (4) (a) (ii) (705 SE2d 878) (2011). Thus, we conclude that

the legislature never intended to make the lack of ante litem notice an affirmative defense, and this enumeration is without merit.

3. Davis further contends that the trial court erred in applying the notice defense to bar his abusive litigation claims because Patterson's enforcement of the TPO interfered with his use of his video camera at the December 10, 2005 council meeting, resulting in $500 in damages. Davis bases this argument on OCGA § 51-7-82 (a), which provides that a timely, voluntary withdrawal, discontinuance, abandonment or dismissal of an action in response to an ante litem notice is a "complete defense" to an abusive litigation claim except "where the alleged act of abusive litigation involves the seizure or interference with the use of the injured person's property by . . . restraining order, or similar process which results in special damage to the injured person."

But this subsection clearly has no application here because Davis never supplied an ante litem notice and the Defendants never voluntarily withdrew, abandoned, discontinued or dismissed any action against Davis. The statutory framework does not prohibit the assertion of a defense based upon the lack of ante litem notice in an abusive litigation case alleging interference with property and special damages. To the contrary, the notice requirement is expressly made a condition precedent in every claim for abusive litigation, OCGA § 51-7-84, and the Defendants were entitled to point to Davis's failure to comply with this provision in defending against his claims. Accordingly, this enumeration is without merit.

4. Davis argues next that the trial court erroneously granted summary judgment on his false imprisonment claim. Davis "maintains that he was imprisoned by Ms. Wallace when she told Chief Patterson to remove him from the council meeting room before she entered the room." He asserts that "Chief Patterson had no authority pursuant to the TPO order to remove [Davis] from the council meeting room because at the time he was removed, he had no direct or indirect contact with Ms. Wallace, nor was he within 100 feet of her" as required by the TPO. We find no error.

False imprisonment is defined in Georgia in the civil context as "the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." OCGA § 51-7-20. Wallace testified that at the second TPO hearing that she had been concerned about Davis from other prior interactions where he indicated his dislike for her and shook his finger in her face. And when Bruce told her about the threats to her home, she took them "very seriously." And the Douglas County Superior Court judge signed a TPO based upon Bruce's information. Wallace provided Patterson with the TPO around the time of the December 10, 2005 council meeting. Patterson said that he examined the order at that

time to ensure it was valid. When Patterson saw Davis at the meeting, he knew that Wallace was a council member and thus required to attend the meeting, which apparently would bring Davis within the proximal distance proscribed by the TPO. Patterson was unaware, however, that Davis was also required to be there by his employment.

Davis averred that Patterson ordered him to leave the council room, but the trial court found that Davis admitted in his deposition that he was "never touched, nor physically restrained or removed, but left after he was asked to leave." As Davis did not include a copy of that deposition in the appellate record, we must presume that finding is correct. Patterson testified that he approached Davis, showed him the TPO and asked him to leave. He said that he wanted Davis to see the document and to understand the potential conse-quences resulting from the order. Patterson said he had no reason to expect that Davis would not comply with his request to leave, and had he not left, Patterson conceded that he would have felt duty-bound to arrest him for violating the order.

Davis cannot establish a claim for false imprisonment under these circumstances. Patterson believed that when Davis saw the TPO, he would understand that remaining in the room would violate the order and thus Patterson was attempting to avoid an arrest. Upon reviewing the document, Davis left, and he was not formally detained, manhandled or arrested in the process. But even if we were to conclude that Patterson's request for Davis to leave the meeting somehow amounts to a detention within the meaning of OCGA § 51-7-20, Patterson was acting under the auspices of a valid TPO that was in full force and effect at the time. The superior court's later dismissal of Wallace's petition due to an untimely hearing date does not change the fact that the TPO was in effect at the time of the council meeting. A TPO simply expires or ceases to exist without a timely hearing; it is not void ab initio. OCGA § 9-11-65. And no claim for false imprisonment exists where the offending action was taken pursuant to valid process:

> An action for false imprisonment will lie where a person is unlawfully detained under a void process, or under no process at all, and cannot be maintained where the process is valid, no matter how corrupt may be the motives of the person suing out the process or how unfounded the impris-onment may be. Where the arrest is by valid process regularly sued out, action for malicious prosecution is the only remedy.

(Citation and punctuation omitted.) *Joseph v. Home Depot,* 246 Ga.

App. 868, 872 (3) (542 SE2d 618) (2000). The fact that Patterson acted under the TPO to avoid any prohibited contact between Davis and Wallace, rather than waiting for the contact to actually occur does not change our analysis. Accordingly, under the circumstances of this case, the trial court properly granted summary judgment on this claim.

*Judgment affirmed. Barnes, P. J., and Blackwell, J., concur.*

DECIDED JUNE 30, 2011 — 

*Michael B. King*, for appellant.

*Cruser & Mitchell, William T. Mitchell, Jennifer G. Cowart, Terry L. Strawser*, for appellees.